UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| MARNIE LYNNE HELM, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. CIV-15-499-D |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |  |
| Defendant. | ) |  |

## REPORT AND RECOMMENDATION

Plaintiff Marnie Lynne Helm brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Timothy DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 8, hereinafter "R. __").[1] The parties have briefed their positions, and the case is now ready for

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

decision. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB and SSI on January 24, 2012, alleging disability on the basis of degenerative disc disease. Plaintiff initially alleged a disability onset date of November 1, 2011, but later amended the date to October 1, 2011. R. 104-118, 136-38, 139-45. Following denial of Plaintiff's applications initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ"). R. 21-37, 44-51, 56-61. The ALJ issued an unfavorable decision on September 27, 2013. R. 11-17. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-6; *see also* 20 C.F.R. §§ 404.981, 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); 20 C.F.R. §§ 404.1520, .1520(a)(4), .416.920, .920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2011, the alleged onset date. R. 13; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the medically determinable impairment of degenerative disc disease. R. 13-15; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ further found that Plaintiff

2

> does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore [Plaintiff] does not have a severe impairment or combination of impairments.

R. 15; *see* 20 C.F.R. §§ 404.1521, 416.921. On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 1, 2011, through the date of the decision. R. 16; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff presents two discrete issues: (1) whether the ALJ's step two finding of no severe impairment was supported by substantial evidence; and (2) whether the ALJ failed to fully develop the medical record. *See* Pl.'s Br. (Doc. No. 10) at 1, 8-11, 12-16.

*A. Whether the ALJ erred in finding that Plaintiff did not have a severe impairment or combination of impairments*

To establish the existence of a severe impairment at step two, Plaintiff "must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). Rather, the claimed impairment "must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (internal emphasis and quotation marks omitted). In determining whether a severe impairment exists, the ALJ must consider the functional "effect" of the impairment. *Id*. To qualify as severe, an impairment must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), .1521(a), 416.920(c), .921(a); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

Though Plaintiff acknowledges the burden she must meet, she does not attempt to establish that her documented "degenerative disc changes" and diagnosed "mild degenerative disc disease" actually limit her ability to perform basic work activities, for example by setting forth restrictions or functional limitations that she claims the ALJ

ignored. *See* Pl.'s Br. at 8-11. Plaintiff argues that the ALJ failed to weigh the "opinions" of her "treating physicians," and in that regard points to a diagnosis of degenerative disc changes and a notation of "a history of knee, hip, and back pain as well as limited range of motion of neck and shoulder areas." Pl.'s Br. at 10-11. But Plaintiff does not identify any functional limitations observed, documented, or imposed by any medical source.[2] *See* Pl.'s Br. at 11. Even assuming Plaintiff could show that an acceptable medical source who served as her treating physician provided an opinion that she suffered from these various impairments, and even if that opinion were given controlling weight, Plaintiff would only have shown the fact of medically determinable impairments—not that such impairments "significantly limit[]" her "physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ agreed that Plaintiff's degenerative disc disease was a medically determinable impairment; he rejected Plaintiff's threshold allegations that the impairment had "significantly limited" (or could be expected to significantly limit) Plaintiff's functional ability to perform "basic work activities"—including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"—for twelve consecutive months. R. 15.

Plaintiff contends that Michael Martin, MD, was her "primary care physician," and also references evaluations by Nurse Meyer and Richard Wedel, MD. Pl.'s Br. at 10.

---

[2] The undersigned's review of the medical record, R. 179-222, has found only one notation from Deanna Meyer, APRN-CPN, dated November 15, 2011, that Plaintiff should "avoid heavy lifting." *See* R. 203.

5

Plaintiff has not shown that any of these persons was her "treating" physician as that term is defined in the regulations. In the Fall of 2011, Nurse Meyer—who as an APRN does not qualify as a treating physician or even an "acceptable medical source" to give a medical opinion (*see* R. 172; 20 C.F.R. §§ 404.1513(a), (d)(1), .1527(a)(2))—ordered x-rays for Plaintiff, which were taken and evaluated by Dr. Wedel. R. 205-07. There is no indication in the record that Plaintiff saw Dr. Wedel other than on November 14, 2011, for the single x-ray evaluation. Nurse Meyer also referred Plaintiff to Dr. Martin for a neurosurgery consultation. *See* R. 179, 182. There is no indication in the record that Plaintiff saw Dr. Martin other than on December 7, 2011, for the single consultation. *See* R. 179-92. Thus, the record does not support that either Dr. Martin or Dr. Wedel qualify as Plaintiff's treating physician. *See Doyal*, 331 F.3d at 762-63 (discussing that the weight given a treating physician's opinion is due to "a relationship of both duration and frequency" and stating that "[a] physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source").

Nor has Plaintiff shown that any of Dr. Martin, Dr. Wedel, or Nurse Meyer offered a qualifying medical opinion that the ALJ did not properly consider. An acceptable medical source may offer an opinion that reflects a "judgment[] about the nature and severity of [the claimant's] impairment(s) including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If medical records reflecting the diagnosis of a

medical condition do not contain an opinion on the functional limitations imposed by the condition, then "the diagnoses by themselves are not significantly probative evidence the ALJ had to reject in order to find [the claimant] was not disabled, and therefore the ALJ did not need to discuss them." *Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015); *accord Welch v. Colvin*, 566 F. App'x 691, 693-94 (10th Cir. 2014) (finding that none of the physicians identified by the plaintiff "provided medical opinions about her that, given her impairments, the ALJ was required to weigh"); *McDonald v. Astrue*, 492 F. App'x 875, 884 (10th Cir. 2012) (indicating treatment notes alone do not qualify as medical opinions).[3]

Plaintiff also suggests that the severity of her impairments was shown by her own testimony at the hearing before the ALJ, including the statement that she was unable to do her prior work because she could not "stand or sit for very long . . . it hurts really bad." R. 27-28. While this evidences a functional limitation in the most general sense, the ALJ found that Plaintiff's statements regarding the limiting effects of her musculoskeletal pain were "not entirely credible." R. 16. The ALJ noted that Plaintiff had testified that she did "the shopping, and the cooking, and the laundry and all of those

---

[3] Plaintiff incorrectly states that Dr. Martin opined that Plaintiff "suffered from degenerative disc changes from C3 to C6." *See* Pl.'s Br. at 10. It was Dr. Wedel who observed "some minimal degenerative disc changes from C3 to C6." R. 205. Dr. Martin merely stated his impression relating to Plaintiff's spine as "Diffuse spine tenderness and pain." R. 181. Further, Dr. Martin did not review Plaintiff's x-rays, noting: "There are no images to review today. She has a report of x-rays showing degenerative disk disease in the thoracic spine and lumbar spine as well as an old fracture at T11 on the thoracic spine." R. 181.

7

kinds of things," which the ALJ found "show[s] that her impairments do not limit her functional capacity." R. 16, 32-33. Plaintiff has not challenged these findings.

Because Plaintiff has not made the threshold showing that her impairments would "have more than a minimal effect" on her physical or mental ability to perform basic work activities, Plaintiff has not shown that any impairments are severe, and thus has not established the existence of a medically determinable impairment that could serve as the basis of a favorable disability decision. The undersigned finds no error in the ALJ's step two determination. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) ("If [at step two] the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits.").

B. *Whether the ALJ failed to develop the record*

Plaintiff next contends that the ALJ failed to develop the record by failing to request a consultative examination. Pl.'s Br. at 12-16. Plaintiff also contends that it was error for the ALJ to not acknowledge or address Plaintiff's request for a consultative examination. Pl.'s Br. at 12-14. However, the Tenth Circuit has held that an ALJ is not required to rule on such a request. *See Harlan v. Astrue*, 510 F. App'x 708, 712 (10th Cir. 2013) ("Without a statute, regulation, or case requiring an ALJ to rule on a request for a consultative examination or to provide reasons for the ALJ's ruling, the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing."); *see also Lundgren v. Colvin*, 512 F. App'x 875, 878-79 (10th Cir. 2013) (finding that the ALJ was not

required to provide a reason for denying a consultative examination). Thus, this aspect of Plaintiff's argument is unavailing.

In explaining the duty placed upon an ALJ regarding development of medical evidence, the Tenth Circuit has emphasized the Commissioner "has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166; *see also Duncan v. Colvin*, 608 F. App'x 566, 570 (10th Cir. 2015). Considering the relevant regulation's older version, the Tenth Circuit in *Hawkins* held that a consultative examination is often, but not always, required in the following circumstances: (1) "there is a direct conflict in the medical evidence requiring resolution"; (2) "the medical evidence in the record is inconclusive"; or (3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d at 1166 (citing prior version of 20 C.F.R. § 404.1519a). In its current form, this regulation further prescribes:

> (b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> > (1) The additional evidence needed is not contained in the records of your medical sources;
> >
> > (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> >
> > (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

> (4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); *see also* 20 C.F.R. § 416.919a(b) (substantially the same).

Under these guidelines, Plaintiff's claim did not warrant a consultative examination because "the evidence as a whole" was sufficient to allow the ALJ to make a determination or decision on Plaintiff's claim. Plaintiff does not allege that evidence was missing or otherwise unavailable, and the undersigned finds that the evidence relied upon by the ALJ was not insufficient, inconsistent, or inconclusive.

Plaintiff argues that, because she raised the issue by "informing the ALJ that she suffered possible right-sided carpal tunnel syndrome and numbness in the arms and legs," "[i]t then became the responsibility of the ALJ to order a consultative examination." Pl.'s Br. at 14. The undersigned disagrees. The record establishes that on December 7, 2011, Plaintiff had a neurosurgery consultation with Dr. Martin regarding her chief complaint of neck pain and back pain. R. 179-81. During the physical exam, Dr. Martin noted that Plaintiff had a positive Tinel's test on her right side at the wrist, but had negative Tinel's tests at the elbows and negative Tinel's test on the left side, as well as negative Phalen's tests.[4] R. 181. Dr. Martin also found Plaintiff's right wrist extension and hand intrinsics were each rated five of five. R. 180. Dr. Martin diagnosed Plaintiff with "possible right-sided carpal tunnel syndrome" and prescribed vitamin B6 and a wrist splint. R. 181. Dr.

---

[4] Positive Tinel's tests and positive Phalen's tests are indicative of carpal tunnel syndrome. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0023120/ (last visited Aug. 8, 2016).

Martin also diagnosed diffuse spine tenderness and pain as well as numbness in the arms and legs, and prescribed physical therapy. *Id.*

On March 23, 2012, state medical consultant Timothy Walker, MD, reviewed Plaintiff's medical records and included the following summary of Dr. Martin's report:

> DEPT OF NEUROSURGERY includes 12/07/2011 report noting reported neck and back pain, no weakness in legs. [Physical exam] notes 5/5 upper/lower extremity strength, wrist [extension] 5/5, hand intrinsics 5/5, hip flexion, adduction and abduction 5/5, knee flexion/extension 5/5, feet/ankles 5/5, DTRs 2+ Did note positive Tinel on right, [diagnosed physical therapy] [and] splint. Gait normal.

R. 198. After considering an additional medical record, Dr. Walker concluded that "[w]hile [Plaintiff] experiences some back pain and possible right wrist issues, her physical condition should be considered non-severe." *Id.* On August 8, 2012, state medical consultant James Wright, MD, reviewed Plaintiff's medical records and also concluded that Plaintiff's condition was "nonsevere." R. 212.

The ALJ discussed all of these records. He reviewed and summarized Dr. Martin's report, noting the positive right-side Tinel's test at the wrist, as well as the diagnosis and treatment. *See* R. 13-14. He cited Dr. Walker's acknowledgement of Plaintiff's "back pain and possible right wrist issues," along with his opinion that Plaintiff's "physical condition should be considered non-severe." *See* R. 14. He also noted Dr. Wright's conclusion that Plaintiff's "physical allegations are non-severe." R. 14.

This record before the ALJ was "sufficient to make a disability determination" and a consultative examination to confirm the diagnosis of carpal tunnel syndrome would not

have "materially assisted" in the decision. *See, e.g.*, *Welch*, 566 F. App'x at 695 (holding no error in the ALJ's failure to order a consultative examination). Regardless of any uncertainty in the *diagnosis* of carpal tunnel syndrome, Dr. Martin thoroughly tested the *effects* of whatever impairment Plaintiff had, and Dr. Walker and Dr. Wright based their opinions on those tests. This is consistent with the purpose of a disability determination, where—again—the primary focus is on the functional limitations caused by an impairment or combination of impairments. *See, e.g.*, *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) ("The mere presence of a condition is not necessarily disabling. Rather, a condition, alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." (citations, brackets, and internal quotation marks omitted)); *Madrid v. Astrue*, 243 F. App'x 387, 392 (10th Cir. 2007) ("Our case law makes clear that a diagnosis of a condition does not establish disability. The question is whether a person's impairment significantly limits his ability to engage in substantial gainful activity.").

It is undisputed that the ALJ considered Plaintiff's allegations concerning her right-wrist pain and the medical evidence recognizing the possibility that Plaintiff may have carpal tunnel in that wrist. *See* R. 13-15 (citing R. 179-82, 198, 199-207, 214-15); 20 C.F.R. §§ 404.1508, .1513, 416.908, .913. But Plaintiff has not shown that the effects of this possible right wrist impairment on Plaintiff's ability to work required further development, or cited anything in the record that might support a finding that her wrist

pain more than minimally affects her ability to perform basic work activities.[5] While Plaintiff's medical record is slim, this was not a situation in which there was "inconsistency in the evidence," or "the evidence as a whole [was] insufficient to allow [the ALJ] to make a determination or decision on [Plaintiff's] claim." *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b); Pl.'s Br. at 13 (citing R. 28-29). Because additional examination was not required for the ALJ to determine the severity of Plaintiff's physical condition, the ALJ did not err in not ordering one. *See Welch*, 566 F. App'x at 695.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by August 30, 2016. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[5] Again, Plaintiff asserts that the ALJ "ignor[ed]" the "opinions" of her "treating physicians," but Plaintiff does not provide citation to any such opinions or any functional limitations allegedly contained therein. *See* Pl.'s Br. at 15, 12-16. And the undersigned's review of the record has found no restrictions or other limitations placed upon her use of her right wrist by any medical source. *See* R. 179-222.

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 16th day of August, 2016.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE